on behalf of Petitioner Jaime Flores, and I'm joined by Michael Burke today. I'd like to reserve two minutes in rebuttal. If you may do so, just watch the clock. So the record's clear. Mr. Burke will not be arguing this morning? That's correct. Thank you. Your Honor, my client alleges that at the time of his guilty plea, he was delusional, he was paranoid, and he was under the influence of antipsychotic medications prescribed to him by the Department of Corrections. Did his lawyer know that? Your Honor, that's – Judge Hawkins, that's what I'm going to attempt to flesh out today, that argument. His lawyer – what Mr. Flores has alleged, and again, we're operating under a colorable claim standard. What Mr. Flores's allegations are is that his lawyer knew or should have known. Okay. And that on this record – Judge Hawkins, I think for the most part I would dispense with new. However, I would point out that in the United States v. Howard, this Court said, consistent with Blackledge v. Ellison, when we're looking at whether a claim is colorable, whether a claim has any merit sufficient to bring it beyond a patently frivolous claim, an affidavit by a lawyer, even a psychiatric report in the record, isn't sufficient to render the claim patently frivolous. And that's the standard for an evidentiary hearing. So while my argument intends to focus on the fact that reasonable knowledge that a reasonable lawyer should have known and that there would be constructive knowledge, I would, in fact, say that even on this record with an affidavit by James Syme, the fact that Mr. Syme hasn't been cross-examined does not conclusively demonstrate that that allegation is frivolous. So let me – let me move then to the question I have. It relates to the imputed knowledge from Ms. Steiner, who obviously had called, communicated with the jail, and there was something in the record. But what left me with a question is that there's nothing in terms of Ms. Steiner's file here, an affidavit about communication, an affidavit about turning over. And I don't know of cases that actually impute, you know, one file to another. So that, to me, is what needs to be the focus of your argument. Your Honor, I appreciate that comment and that question. And I'm going to try to devote the majority of my time to why, in fact, under Strickland's requirement that counsel conduct reasonable investigations in the circumstances or have a reasoned strategy as to why he didn't conduct the investigation to explain that. I think Your Honor's question gets to sort of three basic points. And I would argue that you need to tell us what is the evidence in the State court record of this person's mental incapacity. Absolutely. Your Honor, the evidence is not the evidence in this record is at least threefold. There's three pieces of evidence that suggest that reasonable counsel would have been on notice, which is the question at this stage, whether reasonable counsel would have been on notice of incompetence or whether the court would have been on reasonable notice. If the court, if there's reasonable and the three, at least the three are the fact that counsel had, the previous counsel had knowledge. Now, you're right that in this record that the ---- Okay. So let's just stop there. Previous counsel had knowledge that prompted the telephone call. Is there any evidence that that was before the State court? Your Honor, what we have before ---- Well, let's ---- No. The answer is no. Okay. So if it's not before the State court, how does it figure into the calculus here? Your Honor, I may be confused with the question. If it's a question about whether the record was before the post-conviction court or whether the State court in adjudicating this knew that Ms. Steiner had knowledge, what we know is that as a pro se Petitioner, I think your question gets to some extent to exhaustion. What we know is that as a pro se Petitioner, Mr. Flores is entitled to a generous reading of exhaustion. That's in Davis v. Silva. We know more importantly that with regards to exhaustion, exhaustion requires exhaustion of a claim, not exhaustion of a particular piece of evidence. You know, the problem is we're real well aware of exhaustion and all those things. But I don't think you've answered my question or Judge O'Scanlan's question, which is what does the record show on this subject of Ms. Steiner? And what was the record in front of the court below? Absolutely, Your Honor. The record shows that Ms. Steiner had direct knowledge. The record shows that Mr. Syme did not take any action on this knowledge. What Petitioner, the reason I speak to that is that Ms. Steiner did not take any action   The record shows that Mr. Syme did not take any action on this knowledge. The question is, did he have the information? He says no. And so then I would say, well, can you impute? The question I have is, can you impute her knowledge or those facts to him? And if you can, what's the best case that permits one to do that? Your Honor, I'm sorry, but it seems like I'm speaking around this. The reason there is no direct link. You're right, they're parallel tracks. My approach is to say that he has alleged constructive knowledge. That's why I get back to exhaustion. And constructive knowledge is that the lawyer knew or should have known. And so I'm looking at the aggregate. There is no evidence in this record. There hasn't ever been an evidence. I mean, there's no record in this evidence that Syme had direct knowledge of Steiner's knowledge. What we also have, though, in addition to the direct knowledge by previous counsel. I mean, I guess what I would have imagined is that someone would have spoken to her and then she would have said, I offered my file or I don't know, or I didn't look at the file or I kept my file or I never spoke to the gentleman. I don't have any of that. Your Honor, I fully expect that that will be developed in an evidentiary hearing. No, I would have expected that would have been developed in affidavits. But, Your Honor, that does get to a question of exhaustion, because at this point, if we're asking about whether he had to have an affidavit in State court from Jane Steiner, that that either gets to the standard under E-2 or exhaustion, one or the other. What he alleged was that his counsel knew or should have known. That's sufficient to put the case before the State court as a matter of State and Federal law. He requested an evidentiary hearing, and I assure you that if we have an evidentiary hearing, Ms. Steiner will testify. There's no way for this evidence to have gotten in. He couldn't get a hold of Ms. Steiner. He couldn't get an affidavit from her. We assume that she wouldn't respond. He was diligent in pursuing his course as a pro se Petitioner, Judge McKeown. And it's the aggregate that matters. I mean, Drope in the cases about constructive knowledge talked about looking at the aggregate of the evidence. In this case, Mr. Flores has alleged that there was physical manifestation of his illness, that others around him, including detention officers, saw him twitching, making involuntary movements. He's alleged that his counsel interacted with him while he was in the mental health ward. This interaction is supported by the fact that some of his medical records come from the Phoenix Hospital instead of the jail. There's additional allegations in this record that are supported by the fact that there's just a wealth of records. Had Steiner taken any of these cues, sort of physical manifestations or reasonable transfer duties from prior counsel? True, nothing in the record says Steiner told Steiner. No affidavit from Steiner submitted by this pro se Petitioner. But what we do have is a wealth of records, allegations of physical manifestations, allegations of interacting with counsel. We have a lot of allegations. That's the problem. And the State court had this entire case, and we are now on an AEDPA review, which is very, very differential. That's an important question, Justice Kennedy, and I hope I can address it. Sure. You're right that we are talking about allegations, and that's exactly what I want to talk about at this stage. For purposes of an evidentiary hearing, under the AEDPA standard, allegations alone are sufficient unless the limitations in E-2 are triggered. Insing Shih-Mei versus Morgan is the guiding principle on this. That opinion says Townsend versus Steyn continues to govern evidentiary hearings insofar as E-2 doesn't apply. The magistrate has found specifically that E-2 doesn't bar an evidentiary hearing in this case. Petitioner was diligent. He was not barred by Townsend versus Steyn. So at this point, unless his allegations are patently frivolous, allegations alone are sufficient, Your Honor. There's no argument. Even Judge McKeown has mentioned exhaustion isn't an issue, and I'm not making an issue. But the allegations are alone, and he has put forward before the State court and the Federal court a sufficient record to preserve this claim. I submit that that's before this Court. And in my final few seconds before I sit down, I want to mention that we have raised in our brief that the AEDPA deference really doesn't apply in this case, and I don't know if the State intends to respond. But Taylor v. Maddox makes it very clear. Judge Kaczynski said that when a State court has a defect in this fact-finding process under D-2, that satisfies D-2, and therefore, we can say that there was an unreasonable determination of facts. That's when there's a defective State court finding of fact. When there's a defective fact-finding process, D-2 is satisfied. If D-2 is satisfied under 2254, we don't even have to do a D-1 review. We don't reach D-1. It's an or separating them in 2254. I'm going to reserve the rest of my time for rebuttal. You may do so, Counsel. We'll hear from the government. Good morning. May it please the Court. My name is Robert Walsh, Assistant Attorney General of the State of Arizona, representing the Respondents in this matter. I want to talk about Jean Steiner. She does not appear in the State court record. When you take a look at the Rule 32 petition, the sole claim that Mr. Flores made was that I told Mr. Syme, and actually, his affidavit says, I believe I told him something about my mental condition. After the trial court denied post-conviction relief, he expanded upon it somewhat in the Arizona Court of Appeals and the Arizona Supreme Court in his petition for review by making allegations that Mr. Syme had visited him at the jail in the afternoon and that also Mr. Syme could have subpoenaed those records. When we got to district court, the — again, the claim was actual knowledge by Mr. Syme. And the district court never was put on notice about Jean Steiner, nor was it ever argued anywhere in State court or in district court that there was constructive knowledge to Mr. Syme by virtue of the fact that Mr. Flores allegedly told Jean Steiner about his prior suicide attempt and that she somehow told Mr. Syme and that that should be imputed. So this theory is being raised for the first time on appeal, which was the reason why I moved to strike those exhibits. This is an argument that no court until now has been asked to pass upon. I take issue with the argument this claim has been exhausted, and I also take issue with the claim that counsel just made that there wasn't a full and fair adjudication on the merits of this claim. There is no requirement that there be an evidentiary hearing for this Court to accord deference, and this Court decided that in Lambert v. Blodgett, which said that an evidentiary hearing is sufficient but not necessary. In fact, the Fifth Circuit Court of Appeals routinely decides AEDPA cases and gives deference to what they call paper hearings where you have an affidavit. Now, let's not forget that the judge who denied post-conviction relief in this case was the same judge who took the change of plea and the sentencing hearing. So he was a de facto witness and was able to see Mr. Flores, who, by the way, admitted in his affidavit that he did not know why his answers to the court's questions did not reflect the alleged mental impairment that he's claiming he had now. His attorney was an officer of the court and the prosecutor. Any one of those three lawyers in the courtroom would have noticed that there really was an impairment. But there's additional evidence besides James Syme's affidavit denying knowledge and Mr. Flores' affidavit to the contrary on the issue of competence. And what additional evidence do we have? I invite the Court to look at the Rule 32 petition and see that Mr. Flores avows that on the day before the change of plea, Mr. Syme came and visited him. And what did he say to Mr. Syme? Why haven't you interviewed my witnesses? And they discussed the plea agreement. Well, that does not sound like somebody who doesn't have a rational understanding of the proceedings against him. Nor does that seem to be someone who cannot help his attorney. In addition to those things, you also have the doctor who was treating him in the jail. In the Rule 32 petition, it is avowed that Dr. Rackhiller had a practice of referring inmates he believed to be incompetent to the forensic unit that is assigned Rule 11 competency evaluations. And he did not make such a referral in this case. Petitioner says he would have called Dr. Rackhiller to testify or he would submit an affidavit. He never did. But had he done so, that alone would have dispelled any notion that Mr. Flores was incompetent. And the evidence is very, very clear that Mr. Flores knew what he was doing. In fact, when you take a look at the sentencing, Mr. Flores didn't say, what am I doing here? I didn't plead guilty, did I? He didn't say that when the pre-sentence report writer came to interview him. Instead, what he tried to do is he tried to minimize his culpability. He basically said, yes, I had the victim over at the house. Yeah, I put him in the closet. But I told him it's all a joke. And when I come back from my girlfriend's house, I'm going to release you. And once I left, that's when all the bad things happened to him. So he tried to minimize his responsibility. And it's very important, the words that he used, I was told if I didn't take this  That's what he said at the sentencing. I was told, which means, number one, it was his attorney who told him that. And number two, he understood what he was doing. He did not say at the sentencing hearing, I want to withdraw a judge. I wasn't in my right mind. When he got the eight-year, instead of getting the eight-year minimum he was hoping for and got the 16 maximum, that's when all this started to come forward. Oh, wait a minute. I was incompetent. How come my attorney didn't know? There is absolutely nothing in the record with respect to Gene Steiner indicating that there was some sort of imputed knowledge. In fact, if you even take a look at the The record does show that Steiner was aware of these things, right? Well, actually, it said Gene Stein in Dr. Reckler's December 11, 1997, notation. And I've had this case since December of 2002. And so when I saw that Gene Stein, an attorney for Ms. DeFlores, called, drawing from my own experience as a prosecutor in drug enforcement, I've received phone calls from defense attorneys who weren't representing the defendant saying, hey, I want to take a look at this case. I might take over. Can you tell me about it? What does the State record show, though, in terms of withdrawal of counsel? Wasn't there a Gene Steiner withdrawing his counsel? That is indeed in the record, in the State court record. It wasn't before the trial court in looking at this. So I don't think I'd stake your claim on Gene Stein not being Gene Steiner, not being the attorney. Okay. Fair enough, Judge. I do want to say that the district court nor the State court was ever presented with the argument that because of Gene Steiner's telephone conversation with Petitioner on December 11th, that somehow that knowledge should be imputed to James Syme. In fact, the only time it was given to the courts, the State courts, was in the Arizona Court of Appeals in a petition for review, and that wasn't produced for that reason, but instead to produce more medical records to show Mr. Flores' alleged impairment. But the point I want to make is if you just take a look at the statement itself, it's a 40-word statement by Dr. Rackhiller memorializing the statement, and it basically has received a phone call from Gene Stein, an attorney for Mr. Flores, who has never seen Mr. Flores. She's concerned that he may be suicidal because he told her, if you don't come see me, I'll hurt myself. I've tried before. Now, I want to ask, at least with respect to the competency issue, this is a man who was indicted on November 24th, has not yet seen his attorney, and he's saying, if you don't come see me, I'm going to hurt myself. I think that reflects competence. It shows I understand who you are. You're the person who represents me. I want you to come here. Now, mind you, here he is. He's an original gangster of a street gang. He's very violent. And on the street, this man can point a gun, threaten harm, order people around like he did in this case to do his bidding. And now he's in a place where he does not have any of that capability, and so the one card he could play is, I'm going to hurt myself. Let's assume that at the point the habeas petition was presented to district court that Steiner knew. This is a hypothetical question, obviously. The state of the record when it arrived at district court was that Steiner knew of Flores' mental problems, whatever the scope of them were. How long do you think it would take in terms of an evidentiary hearing to establish whether the first lawyer knew, A, and, B, whether that evidence was actually passed or can be fairly imputed to the second lawyer? An afternoon. But the question is, the question before this Court is not how long would it take for an evidentiary hearing to occur, but whether the first lawyer knew, A, and, B,  lawyer. The question is whether or not one should have been granted. And in this particular case, I'm going to even go and be as generous as possible. Let's assume that it was heard by the district court, two-hour hearing, and the district court said, okay, I've listened to Steiner, I've listened to Symes. It's unclear that Steiner knew, but even if we assume Steiner knew, Steiner didn't tell Symes, and there's nothing in the record to suggest that Symes should have known. How long do you think it would take this Court to deal with that record? It would be pretty quick, and it wouldn't just be You probably wouldn't be here arguing, would you? No. And I also do not want to abandon the prejudice prong, because as I've argued in my brief, if you the defendant can't meet both prongs of the Strickland standard, there is no need for an evidentiary hearing. And the Supreme Court noted in Landrigan, Schirero v. Landrigan, it cited to this case's opinion in Totten v. Merkel. And that was a case where it was very clear there was no prejudice. So even under a pre-AEDPA standard, even assuming Gene Steiner told James Symes, we still can't prove prejudice, because number one, we know that mental defenses, diminished capacity, voluntary intoxication, that is legally unavailable, and the facts were such that it wouldn't be available to him. So what you're telling me is that this record that you're very obviously very familiar with is that you feel confident if there were a hearing, you could establish, one, that Steiner wasn't aware of the full scope of Flores' mental problems, that that, two, that that evidence was never affirmatively passed on to Symes, and that there's nothing to suggest that Symes should have known, and fourth, even after hearing all of that, there's no prejudice. So I guess my sort of global question is, why do you folks oppose evidentiary hearings when you could clear the record by having one? Well, number one, you're talking about resources. You're talking about events that occurred ten years ago. You are also assuming that the memory of the witnesses are going to be clear, which it may not be. And the thing is, it's not whether or not how much, the question is not how much time would it take. The question is, should a hearing be granted? And when the record overwhelmingly shows there's no prejudice, then to even discuss deficient performance is a futile exercise. It wastes the time of the magistrate who has to hear the hearing, who has to draft the report and recommendation, and the judge who has to then deal with it. Then there will be an appeal, and we'll be back here. And there are a lot of resources that are at stake that are scarce. And the State has an interest in finality of its adjudications. And these evidentiary hearings, if they don't serve a valid purpose, just waste taxpayer money. Thank you very much. I appreciate it. Thank you, counsel. Mr. Marceau, you have a little reserve time. I want to try to address quickly just four points that were made. The first is this question that there would be no finding of prejudice, that prejudice is impossible in this case. Under the United States v. Howard, this case is relied on in our briefs, the court held that for purposes of a plea, if the Petitioner alleges that he would not have for purposes of prejudice in a case like this. We don't look at overwhelming evidence at this stage. The second thing I want to stress is that Respondent's argument largely weighs the competency evidence. He says, well, look what he did here, look what he did here. But we have to realize that even after Landrigan, allegations alone are sufficient for an evidentiary hearing unless it's conclusive from the record that no hearing is required. That's not the case here. The final thing I want to mention is that exhaustion is an issue that Respondent wants to talk about a lot. But the claim that was exhausted is that counsel knew or should have known. It's a constructive knowledge claim. It's not was the claim of Steiner exhausted. It's that constructive knowledge was exhausted. And in Taylor v. Maddox, I want to close by just quoting Judge Kaczynski here. He said, If a state court makes an evidentiary finding without holding a hearing and giving a petitioner an opportunity to present evidence, such a finding is clearly an unreasonable determination for purposes of D-2. That's binding law. I think it's broad, but it applies to this case. And so the deference of evidence. Thank you, counsel. Your time has expired. Thank you, Judge. The case just argued will be submitted for decision. And we will hear argument next in Johnson v. Knowles.
judges: O'scannlain, Hawkins, McKeown